# Skinner *v.* Chapman.

*Bill in Equity between Decedent's Children, in matter of Exempt Property.*

1. *Husband and wife as parties.*—The statute providing that a married woman "must sue or be sued alone, when the suit relates to her separate estate" (Code, § 2892), does not apply to suits in equity.

2. *Competency of party as witness, in action by or against administrator, as to transactions with, or statements by decedent.*—Where the administrator of the deceased wife is a party defendant to a suit between the children of the deceased husband, relating to property which is claimed as belonging to the estate of each, one of the plaintiffs is not competent to testify as a witness to any transaction with, or statement by the deceased wife (Code, § 3058), unless called to testify by the opposite party.

3. *Exemptions in favor of widow and children; by what law determined.*—The exemptions in favor of the widow and minor children of a decedent, as against the other heirs and distributees, are to be determined by the law which was in force at the time of his death.

4. *Same; under statute of February 8th, 1872.*—Under the provisions of the statute approved February 8th, 1872, a homestead of 160 acres was exempted to the widow, "to be ascertained by allotment, or in money, at her election" (Sess. Acts 1871–2, pp. 91–3); and the property allotted to her, both real and personal, when selected, vested absolutely in her, with power of alienation.

5. *Claim of exemption as against mortgage.*—A mortgage on growing crops, executed by the decedent in his life-time, is paramount to the widow's right of exemption; and if she pays the mortgage with the proceeds of the crops, it is thereby satisfied and extinguished, and its assignment to her confers no rights.

6. *Mortgage of homestead; payment by widow with borrowed money.* A mortgage on the homestead having been executed by the decedent in his life-time, if the widow receives funds sufficient to pay the debt, which she uses for other purposes, and then pays the mortgage debt

[Skinner v. Chapman.]

with borrowed money, taking an assignment of the mortgage to herself, and afterwards foreclosing it by a sale under the power; she thereby acquires, as against the heirs and distributees, nothing but the naked legal title, the mortgage debt being paid and extinguished.

7. *Same; when heirs and distributees may come into equity.*—The surviving wife having paid off a mortgage on the homestead lands, under circumstances which made the payment enure to the benefit of the estate, taking an assignment of the mortgage to herself, and acquiring a conveyance from the nominal purchaser at a sale under the power therein contained, the husband's children by his first marriage may maintain a bill in equity against her personal representative and children, to remove the cloud on the title, and to have their rights in the property declared and established.

APPEAL from the Chancery Court of Marengo.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on the 30th August, 1882, by the children of Thomas Taylor, deceased, by his first wife, the husbands of the married daughters being joined as parties with their wives, against the personal representative and children of his second wife, Mrs. Louisa Taylor, who survived him; and sought, principally, to have the complainants' rights declared and established in a certain tract of land, which contained about 250 acres, and which was the homestead of the deceased at the time of his death.

The complainants' mother died in 1852, or 1853, and their father married his second wife, Mrs. Louisa Phelps, in 1855. Thomas Taylor died in September, 1872, and his surviving wife departed this life in March, 1882. The bill alleged that the complainants' mother, at the time of her marriage with said Thomas Taylor, was possessed of a statutory estate in money and property, which went into the hands of her said husband, and a part of which was invested by him in the purchase of the said tract of land, though the title was taken in his own name; but it was further alleged, in this connection, "that this bill is not filed to set up or enforce any exclusive claim or title to either real or personal property to complainants alone, to the exclusion of their younger half-brothers and sisters, but to protect equally all the children of their deceased father, and to have the property he died possessed of divided between them fairly and equitably, share and share alike." On the 2d November, 1870, Thomas Taylor and his wife executed a deed to J. T. Jones, as trustee, conveying said homestead tract of land to secure the payment of a debt due to one Danby, which fell due on the 1st December, 1871; and a small portion of this debt was still due and unpaid at the time of his death. The bill alleged that Mrs. Louisa Taylor, the surviving widow, paid off the balance of this debt with moneys belonging to the estate, and had the mortgage transferred and assigned to herself; and afterwards, having adver-

[Skinner v. Chapman.]

tised and sold the land under the power contained in the mortgage, she procured H. A. Woolf to become the nominal purchaser, who then executed a conveyance to her for life, with remainder to her children. In April, 1872, Thomas Taylor executed another mortgage, conveying said land, the crop growing thereon, and all his personal property, to Crenshaw, Lovelace, Morgan & Co., to secure an indebtedness for advances made by them to enable him to make a crop; and this debt was unpaid at the time of his death. The bill alleged that Mrs. Louisa Taylor paid off this debt with the proceeds of sale of the crops, and took an assignment of the mortgage to herself; and having afterwards foreclosed the mortgage by a sale under the power, she procured said H. A. Woolf to become the nominal purchaser, who then executed a conveyance to her for life, with remainder to her children. Mrs. Louisa Taylor, by her last will and testament, devised and bequeathed all her property to her own children, including two children by a former husband; and the probate of this will being contested, special letters of administration were granted to Samuel E. Chapman, who was made a defendant to the bill with her children. No administration was ever granted on the estate of Thomas Taylor, and the bill alleged that administration was unnecessary, the debts having been paid. On these facts and allegations, the bill prayed that the mortgages be declared satisfied, and satisfaction be entered of record; that the sales under them, and the conveyances between Woolf and Mrs. Taylor be declared fraudulent, and cancelled; that complainants' rights in the property be declared and established by the decree of the court, and for other and further relief under the general prayer.

A joint and several answer to the bill was filed by Chapman and the other adult defendants, in which they alleged that all the property of which Thomas Taylor died seized and possessed, was not more than the law exempted to the widow and children, and remained in the possession of the widow as exempt property; that she paid off the mortgages with her own means, and with money borrowed for the purpose, and had the sales made under them as alleged, and took the deeds to herself and children in good faith, as muniments of her title. They also demurred to the bill, and moved to dismiss it, for want of equity, for misjoinder of complainants, because complainants had an adequate remedy at law, and on several other grounds.

The record does not show that the chancellor acted on the demurrer, or on the motion to dismiss; but, the cause being submitted for final decree on the pleadings and proof, he held that the complainants were not entitled to relief, and therefore

dismissed their bill. The decree dismissing the bill is now assigned as error.

EUGENE McCAA, for appellants.

BUSH & TAYLOE, *contra.*

SOMERVILLE, J.—We have often held that section 2892 of the present Code (1876), which provides that a married woman "must sue or be sued alone, when the suit relates. to her separate estate," applies only to actions at law, and has no reference to suits in equity.—*Sawyers v. Baker*, 72 Ala. 49 ; *Sims v. National Com. Bank*, 73 Ala. 248. The husbands of the two married women were properly joined with them, therefore, as complainants.

The complainant, J. D. Skinner, was not a competent witness, as to any transaction with or statement by the decedent, Mrs. Louisa Taylor, which transpired during her life-time, unless he was called to testify by her personal representative, who was one of the defendants in the cause.—*Goodlett v. Kelly*, 74 Ala. 213 ; *Keel v. Larkin*, 72 Ala. 473 ; *Dudley v. Steele*, 71 Ala. 423. In considering the testimony, we shall, for this reason, exclude so much of this witness' deposition as falls within the prohibition of section 3058 of the Code, and to which objection was interposed.

Thomas Taylor is shown to have died in September of the year 1872, owning at the time about two hundred and fifty acres of land, which he occupied at the time as a homestead. He left surviving him his widow, Louisa Taylor, and several minor children, who continued to occupy the premises until the widow's death, which occurred in March, 1882. Taylor, prior to his decease, had excuted a deed of trust on these lands, bearing date in November, 1870, to J. T. Jones, as trustee, to secure the payment of a debt of nearly eight hundred dollars, due to one Danby, all of which was paid by Taylor, except the sum of one hundred and thirteen dollars. There was also a mortgage on a portion of the lands, executed by Taylor in April, 1872, to secure a debt of between one and two hundred dollars due Crenshaw, Lovelace, and others, for which they also held a mortgage on Taylor's crops to be raised during the current year. The widow came into possession of the crops of the decedent, shown to have been about seventeen bales of cotton, besides several hundred bushels of corn, valued at between twelve and fourteen hundred dollars. The cotton she disposed of, and paid the mortgage debts, having the mortgages *assigned* to herself. In 1876 she foreclosed these mortgages,

[Skinner v. Chapman.]

under a power of sale, and purchased the premises at her own sale, through the agency of one Woolf.

The exemptions of both realty and personalty, in favor of the widow and minor children, as against the heirs and distributees of the estate, are to be governed by the act approved February 8th, 1872, which was the law in force regulating the subject of such exemptions at the time of the decedent's death. *Davis v. Davis*, 63 Ala. 293. This statute exempted one thousand dollars in personalty, and a homestead of one hundred and sixty acres, which was "to be ascertained by allotment, or in money, at the election of the widow," if there be one ; otherwise, of the minor children. The title of exempted property under the provisions of this law, when selected, vested absolutely in the widow, "with the power of alienation" on her part.—Acts of 1871–72, pp. 91-93. In this particular it differed from existing exemption laws, under which the homestead right continues only during the life of the widow and the minority of the infant children, with subsequent reversion to the heirs of the decedent; and the personalty goes to the widow and minor children, to be accounted for only in the event of the estate proving solvent, and then only as so much advanced on their distributive shares of such estate.—*Hunter v. Law*, 68 Ala. 365. The cause is not before us in such shape as to require that we should settle the precise interest, if any, which the widow acquired in the lands by way of exemption. It is not shown that she procured to be allotted to her by appraisers any particular part of the land as a homestead, or whether she elected to receive therefor money by way of commutation. No title, therefore, perhaps to any particular "one hundred and sixty acres" of the homestead tract, vested in her. *Turnipseed v. Fitzpatrick*, 75 Ala. 297.

Mrs. Taylor's rights to the personal property are of chief importance, as the case is now presented before us. It is manifest, in the first place, that no right of exemption could attach to any portion of the crops, as against the mortgage debt due Crenshaw, Lovelace and others, this lien having been created as a lawful incumbrance on such crops by the decedent during his life.—*Loeb v. Richardson*, 74 Ala. 311. The law required that this property should be appropriated to the payment of this debt, and the evidence satisfies us that this was done. The whole of this claim was, therefore, paid out of the proceeds of crops belonging to the estate, and the widow could reap no benefit from taking an assignment to herself of a satisfied mortgage—one paid off from trust funds in her hands for the purpose. The balance due on the Danby mortgage debt was about one hundred and thirteen dollars, and this was paid by Mrs. Taylor, in November, 1882. The witness, Phelps, says

he loaned her the money with which to pay this amount, which she did, taking an assignment of the instrument for her own benefit.   Admitting that this statement of the witness is based upon his own knowledge of the uses to which the money was put, and not upon mere information—which is not rendered clear—we can dispose of this branch of the case by one observation.   Mrs. Taylor is shown to have come into possession of about eighteen hundred dollars of personal property belonging to the estate, including the crops, and giving her the full benefit of the thousand dollars worth allowed to her by way of exemption, which, however, the evidence fails to show she selected, the fact is patent, that she had on hand funds amply sufficient with which to pay this mortgage debt.   If she used this money for other purposes, and afterwards borrowed other funds to pay the debt, the law will regard it as paid from the money of the estate.   The Danby mortgage, then, being satisfied from trust funds, the assignment of it to the trustee conferred no right upon her which a court of equity can recognize.

The two mortgages, being satisfied, were *functi officio*.   And although the payment of the mortgage debt did not, under the law as it then existed in this State, operate to divest the legal title of the mortgaged lands out of the mortgagees, the power to sell these lands was abrogated in view of the extinguishment of the debts ; and the attempted foreclosure under the powers of sale accomplished no more than to transfer the naked legal title to Mrs. Taylor, which she held in trust for those entitled. *Hayes v. Wood*, 72 Ala. 92 ; *Slaughter v. Swift*, 67 Ala. 494. No title was acquired by Mrs. Taylor under these purchases, except that of a mere mortgagee after default and before foreclosure, the mortgage debt being paid.   The sale and purchase could not operate, under the circumstances, to add any strength to this bare legal title.

In this view, the complainants had no adequate remedy at law, and a court of chancery was evidently the only forum which had jurisdiction of the case made by the bill, inasmuch as the interest which all of the complainants had in the real property was purely equitable, and not legal.

The bill should not have been dismissed ; and the decree of the chancellor must be reversed, and the cause remanded, that the rights of the parties litigant may be adjudged in harmony with the foregoing views.